UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | |
|---|---|
| ESTATE OF TAMMY JEAN VANDAM, ) | |
| by its duly appointed Special Administrator, ) | |
| HORIZON TRUST & INVESTMENT ) | |
| MANAGEMENT, N.A., JANEEN BETH ) | |
| URSCHEL, ESTATE OF CHRISTINA ) | |
| SANTIAGO, by its duly appointed ) | |
| Administratrix, ALISHA BRENNON, ) | |
| ALISHA BRENNON, ESTATE OF ALINA ) | |
| R. BIGJOHNY, by its duly appointed ) | |
| Special Administratrix, POLLY A. ) | |
| BIGJOHNY, and TAMARA PORTER, on ) | |
| behalf of themselves and those similarly ) | |
| situated, ) | |
|        Plaintiffs, ) | |
| ) | |
| vs. ) | 1:11-cv-01302-SEB-MJD |
| ) | |
| MITCHELL E. DANIELS, JR., in his ) | |
| official capacity as Governor of the State of ) | |
| Indiana, and GREGORY ZOELLER, in his ) | |
| official capacity as Attorney General of the ) | |
| State of Indiana, ) | |
|        Defendants, ) | |
| ) | |
| vs. ) | |
| ) | |
| ROELAND POLET, JAYMIE POLET, J.P., ) | |
| a minor, TRACY L. GREEN, and JILL ) | |
| MANDEL POLET, ) | |
|       Intervenor Plaintiffs. | |

## ENTRY ON PENDING MOTIONS

This cause is now before the Court on Plaintiffs' Emergency Motion to Certify

Class [Docket No. 9], filed October 11, 2011, pursuant to Federal Rule of Civil Procedure

23; Plaintiffs' Motion for Preliminary Injunction [Docket No. 12], filed October 13, 2011,

pursuant to Federal Rule of Civil Procedure 65; and Plaintiffs' Emergency Motion for Discovery [Docket No. 18], filed October 14, 2011, pursuant to Federal Rule of Civil Procedure 34.[1] Plaintiffs, Estate of Tammy Jean VanDam et al., filed this action pursuant to 42 U.S.C. § 1983, claiming that Defendants, Mitchell E. Daniels, Jr. and Gregory Zoeller, violated their rights to due process and equal protection protected by the Fourteenth Amendment to the United States Constitution. Further, Plaintiffs allege that certain damages caps established by Indiana Code § 34-13-3-4—a portion of the Indiana Tort Claims Act—violate these Fourteenth Amendment rights as well as Article 1, Section 12 of the Indiana Constitution.[2]

The Court conducted a hearing on October 24, 2011 [Docket No. 30], at which time we determined that class certification was not immediately necessary. Having reviewed the parties' subsequent briefing, and for other reasons detailed in this entry, the Court now GRANTS Plaintiffs' Motion to Certify Class, but only with respect to the federal constitutional issue. Additionally, we DENY Plaintiffs' Motion for Preliminary Injunction, and we DENY Plaintiffs' Emergency Motion for Discovery.

### Background

---

[1] Because the parties have completed and submitted their briefs, this entry disposes of Plaintiffs' Motion for Expedited Briefing Schedule [Docket No. 11], filed October 11, 2011. Plaintiffs' Motion for Oral Argument or Hearing on Plaintiffs' Motion to Certify Class Action [Docket No. 34], filed November 7, 2011, is similarly moot because of the Court's October 24, 2011 hearing and our present decision on the other pending motions.

[2] Article 1, Section 12 of the Indiana Constitution provides that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without denial."

## I. The Stage Collapse and the Parties

The horrific facts underlying this litigation sadly have become unsettlingly familiar to almost everyone across Indiana, indeed, throughout the country. Each August, the Indiana State Fair presents a series of concerts at the Hoosier Lottery Grandstand, located within the Indiana State Fairgrounds in Indianapolis, Indiana. Sugarland, a popular country music duo, was scheduled to take the stage for one such concert on August 13, 2011. Regrettably, the show never began that night, as what initially looked like inclement weather quickly escalated into tragedy. Moments before the concert was set to begin but after the grandstands and adjoining seating areas had filled with eager fans, strong winds swept through and toppled the stage's overhead rigging and lighting system; these structures collapsed directly into the grandstand and onto assembled audience members. This tragic event, to which we hereinafter refer as the "Stage Collapse," proximately resulted in seven lost lives and serious injuries to numerous other persons.

All of the named Plaintiffs in this action were present in the Hoosier Lottery Grandstand on August 13, 2011 and allege as follows regarding their injuries either directly or proximately caused by the Stage Collapse:

Tammy Jean VanDam, whose interests are represented by her estate, died almost instantly in the Stage Collapse. Second Am. Compl. ¶ 11. Christina Santiago and Alina Bigjohny, also represented by their estates, both died from crushing injuries sustained that night. *Id.* ¶¶ 13, 15. Janeen "Beth" Urschel had her metatarsal phalanges amputated and suffered "significant personal physical injury"—namely, a broken clavicle and crushed right foot—due to the Stage Collapse. *Id.* ¶ 12. Alisha Brennon suffered a brain injury

and fractures to her leg, face, ribs, and vertebrae.  *Id.* ¶ 14.  Additionally, Ms. Urschel and

Ms. Brennon both claim loss of consortium because their partners—Ms. VanDam and

Ms. Santiago, respectively—died as a result of the Stage Collapse.  Tamara Porter alleges

physical impact during the Stage Collapse and "extreme psychological and emotional

trauma as a result."  *Id.* ¶ 16.

    At all times relevant to this lawsuit, Defendant Mitchell E. Daniels, Jr. was the

Governor of the State of Indiana.  Section 34-13-3-14 of the Indiana Code, a provision of

the Indiana Tort Claims Act, vests in him the power to "compromise or settle a claim or

suit brought against the state or its employees" in tort.  Ind. Code § 34-13-3-14.  Plaintiffs

have brought suit against him and Defendant Gregory Zoeller, the current Attorney

General for the State of Indiana ("Attorney General"), both in their official capacities.

## II.  The Indiana Tort Claims Act

    Pursuant to the Indiana Tort Claims Act, an individual wishing to pursue a tort-

based action against the State of Indiana must first file a notice of his or her tort claim

with the Attorney General or other state agency involved.  Ind. Code § 34-13-3-6(a).  The

purpose of requiring the submission of a notice of tort claim is to "inform state officials

with reasonable certainty of the accident or incident and surrounding circumstances so

that the state may investigate, determine its possible liability, and prepare a defense to the

claim."  *Ricketts v. State*, 720 N.E.2d 1244, 1246 (Ind. Ct. App. 1999).  The appropriate

governmental entity then has ninety (90) days to respond in writing to the notice,

informing the claimant of its approval or denial of the claim.  Ind. Code § 34-13-3-11.

No person may bring such action in a court of law until his or her tort claim has been

denied in whole or in part.  *Id.* § 34-13-3-13.

One who files a notice of tort claim with the Attorney General must do so within the statutorily-set period of two hundred seventy (270) days after the triggering event. The form for such notice is provided by the Attorney General; it "must specify:  (1) the information required; and (2) the period of time that a potential claimant has to file a claim."  Ind. Code § 34-14-13-6(b); *see also id.* § 4-22-2 (rule adopted under the Indiana Code requiring the Attorney General to prescribe claim forms).  However, the Indiana Code does not require the Attorney General to declare on this form that the filing deadline is 270 days.  Moreover, it does not preclude the governmental entity from setting a different deadline altogether.  *See id.* § 34-14-13-6(b).

Following the Stage Collapse, the Attorney General created the Indiana State Fair Tort Claim Form (the "Claim Form") and posted the document publicly on its website along with related news releases focusing attention on the process.  The Claim Form requests the following information from each claimant or his or her representative:  (1) basic contact information; (2) the length of any Stage Collapse-related hospitalization (with supporting documentation); (3) whether the claimant died as a result of the Stage Collapse; (4) demographic information, including number of dependents, marital status, head of household status, level of education, and income range; (5) the length of any Stage Collapse-related absence(s) from work; and (6) a description of the nature and extent of the claimant's injuries and their actual or reasonably expected impact on the

claimant.[3]  Defendants required all Stage Collapse claimants to submit the Claim Form by November 1, 2011.  Second Am. Compl. ¶ 33.

Though suits against governmental entities have traditionally been limited by principles of sovereign immunity, the Indiana General Assembly has "increasingly allowed the government to be sued for wrongdoing."  *Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 345 (Ind. 2005).  In 1974, soon after the Indiana Supreme Court's abrogation of sovereign immunity in *Campbell v. State*, 284 N.E.2d 733, 736-37 (Ind. 1972), the state legislature enacted the Indiana Tort Claims Act, Ind. Code § 34-13-3-1 *et seq.*  The statute provides, *inter alia*, a list of governmental activities that the legislature has immunized from tort liability.  *See id.* § 34-13-3-3.  In situations where, as is the case with the Stage Collapse, governmental actors are not excluded from liability,[4] Section 34-13-3-4 of the statute limits the State's liability as follows:

> The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment . . . does not exceed:
>> (1) for injury to or death of one (1) person in any one (1) occurrence:
>>> (c) seven hundred thousand dollars ($700,000) for a cause of action that accrues on or after January 1, 2008; and
>> (2) for injury to or death of all persons in that occurrence, five million dollars ($5,000,000).

*Id.* § 34-13-3-4(a).  Defendants have publicly announced their intention to disburse the full $5,000,000 available for Stage Collapse victims, but no more than that amount.

---

[3]OFFICE OF IND. ATT'Y GEN., INDIANA STATE FAIR TORT CLAIM FORM:  PHYSICAL INJURY OR DEATH FROM INCIDENT ON AUGUST 13, 2011 (Sept. 2011), *available at* http://www.in.gov/attorneygeneral/files/Indiana_State_Fair_Tort_Claim_Form.pdf.

[4]The Stage Collapse does not fall within any of the enumerated losses for which "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable."  *See* Ind. Code § 34-13-3-3.

Second Am. Compl. ¶ 33; Defs.' Prelim. Resp. Br. at 3.  Although we are informed that the distribution of this fund has not yet commenced, it is Defendants' position that, when and if any individual settles a claim by accepting payment from this fund, it "will release the State . . . from all liability."  *Id.* ¶ 36.

A related fund, also supervised by the State, is the State Fair Relief Fund, consisting of all the donations voluntarily given by private individuals to assist the victims with their medical losses.  This fund was established by the State Fair Commission in response to the outpouring of concern and support for the victims and their families.  Second Am. Compl. ¶ 34.  The distribution system for this voluntary repository sorts claimants according to "(a) death cases, (b) hospitalization for 10 or more days, (c) hospitalization for 4-9 days, and (d) hospitalization for 1-3 days, with claimants receiving separate amounts . . . depending solely upon the category into which they fit." *Id.*  The Attorney General avers that the State has "had nothing to do with the distribution of the charitable donations," and Plaintiffs present no evidence as to the distribution procedures or the individuals who received money from this fund.  Defs.' Resp. Br. at 3-4.

## Legal Analysis

### I.  Motion for Class Certification

### A.  Standard of Review

When determining whether certification of a class action lawsuit is appropriate, a district court has broad discretion.  *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir.

2001).  It is well-settled Supreme Court precedent that "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in a manner to each member of the class.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

Class action lawsuits are governed by Federal Rule of Civil Procedure 23.  A party seeking class certification under this rule bears the burden of demonstrating that certification is appropriate.  *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993).  Rule 23 prescribes a two-step analysis to make this determination.  First, a plaintiff must satisfy all four threshold requirements of Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation.  *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).  These elements are a prerequisite to certification; failure to meet any of them precludes class certification.  *Retired Chi. Police Ass'n*, 7 F.3d at 596. If a plaintiff succeeds with respect to these elements, he must then satisfy Rule 23's other requirement:  showing that the circumstances of the case place it within one of Rule 23(b)'s three "types" of class actions.  *Spano*, 633 F.3d at 582.  A district court's decision as to the representative plaintiffs' satisfaction of the Rule 23 prerequisites may only be set aside on appeal for an abuse of discretion.  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Here, Plaintiffs seek to certify their class under Federal Rule of Civil Procedure 23(a) and either Rule 23(b)(1) or 23(b)(2); they also request that the Court designate them

as class representatives and their counsel as class counsel.  Defendants oppose class

certification, arguing that Plaintiffs have failed to present facts establishing any of the

Rule 23(a) certification prerequisites.  In Defendants' view, the participation of the

Intervenor Plaintiffs ("Intervenors") in this lawsuit, who are a group of claimants separate

from but in addition to the putative class Plaintiffs, makes class certification even more

inappropriate.  Because the Intervenors are eager to settle their claims, Defendants

contend that "certifying a class and imposing counsel on claimants who have counsel

working for them . . . would be unjust and unwise."  Defs.' Resp. Br. at 6.

Plaintiffs seek to certify a class composed of the following individuals:

(a) the estates and personal representatives of all those who died as a proximate
result of the Stage Collapse;

(b) all persons who sustained physical injury as a proximate result of the Stage
Collapse; and

(c) all persons who sustained physical impact in the Stage Collapse and suffered
severe emotional distress as a proximate result of the Stage Collapse.

Second Am. Compl. ¶ 20.  They maintain that "[w]hile the injuries may vary in severity,

the cause of them is common and the theory of liability against the State will be uniform

in nature."  Pls.' Mot. for Class Cert. ¶ 4.  In their Reply Brief, they specifically request

class certification on a limited fund basis under Rule 23(b)(1)(B).  Pls.' Reply Br. at 9.

**B.  Class Certification Criteria**

We next address the four criteria of class certification set out in Rule 23(a):

***Numerosity.***  The Federal Rules of Civil Procedure require that the class be so

large as to render joinder of all parties impracticable. Fed. R. Civ. P. 23(a)(1). Although

no fixed numerosity rule exists and "no magic number satisfies this element," *id.*, the

court must consider factors such as class size, ease of identifying members, geographic

dispersion of members, and the magnitude of individual claims. *Young v. Magnequench

Int'l, Inc.*, 188 F.R.D. 504, 506 (S.D. Ind. 1999). The court also "considers judicial

economy and the ability of class members to institute individual suits." *Schmitt v. United

States*, 203 F.R.D. 387, 401 (S.D. Ind. 2001) (citation omitted).

In the instant litigation, Plaintiffs allege—and Defendants do not contest—that the

putative class numbers in the vicinity of one hundred (100) persons. Second Am. Compl.

¶ 29. Such a class is not remarkably large; nevertheless, it appears to be sufficient.

*Schmitt*, 203 F.R.D. at 401 (finding that a class of "approximately 100 to 120 members"

satisfied Rule 23(a)(1)); *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553

(11th Cir. 1986) (concluding that "generally . . . more than forty [is] adequate"). Further,

because Plaintiffs have gathered some data about the proposed class via the submitted

Claim Forms, we are persuaded that they are not merely speculating about this group's

size or geographic dispersion. They have identified many class members by name in their

Second Amended Complaint and need not show an exact number of individuals who are

within the class to succeed on this prong. Second Am. Compl. ¶ 29; *see Blanford v. St.

Vincent Hosp. & Health Care Ctr., Inc.*, No. 1:08-cv-1094-DFH-TAB, 2009 WL500527,

at *6 (S.D. Ind. Feb. 27, 2009). Moreover, the Court finds that although class members

*could* institute individual claims, joinder would be either "extremely difficult or

inconvenient." *Evans v. Evans*, 818 F. Supp. 1215, 1219 (N.D. Ind. 1993).  Therefore, we find that Plantiffs have satisfied the numerosity requirement

   ***Commonality.***   The next requirement for class certification is that the class present common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  "Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class." *Keele*, 149 F.3d at 594.  Plaintiffs allege that Defendants have engaged in standardized conduct in several ways: "arbitrarily and capriciously attempt[ing] to compel settlement of claims"; "resolv[ing] claims . . . at the expense of the class as a whole"; preparing to pay claims up to the statutory damages cap of $5,000,000; and denying claimants access to the courts.  Second Am. Compl. ¶¶ 57, 60, 64, 69.

   Because any well-crafted class action complaint raises common questions, the Supreme Court has acknowledged that Rule 23(a)(2) is often misread.  In the recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Supreme Court stated that although commonality requires plaintiffs to "demonstrate that the class members have suffered the same injury," their claims "must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination . . . will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551 (internal quotation and citation omitted).  The Court

concluded that what is most relevant to class certification "is not the raising of common

'questions' . . . but, rather the capacity of a classwide proceeding to generate common

*answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed

class are what have the potential to impede the generation of common answers." *Id.*

(quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.

L. REV. 97, 132 (2009)).

Defendants here argue that there is no evidence of commonality because "[t]here

are necessarily intra-class conflicts" permeating this case. Defs.' Resp. Br. at 2. Stated

otherwise, Defendants posit that the existence of a limited fund pits claimants against one

another. Additionally, Defendants contend that Intervenors' willingness to negotiate with

the Attorney General belies Plaintiffs' allegations of common questions of law or fact.

*Id.*

We agree with Defendants that there is no commonality with respect to the

claimants' interests in receiving their share of the public fund. The same is true for

declaring "Defendants' actions" unconstitutional, as Plaintiffs have no facts to

demonstrate what Defendants have actually *done* or, for that matter, intend to do.

However, as long as a single issue is common to all class members, "[n]ot all factual or

legal questions raised in the lawsuit need to be common." *Does v. City of Indianapolis*,

No. 1:06-cv-865-RLY-WTL, 2006 WL3365672, at *3 (S.D. Ind. Nov. 20, 2006) (quoting

*Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986)). The Seventh Circuit has

previously held that factual variations among putative class members' allegations do not

automatically defeat class certification. *Keele*, 149 F.3d 589; *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980). Therefore, if a class claim could arise out of the same legal or remedial theory, we may find that commonality exists on a limited basis. *Patterson*, 631 F.3d at 481.

Here, we find that, for purposes of determining the issue of whether Indiana Code § 34-13-3-4 violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement. Importantly, however, we find no commonality among the proposed class members regarding access to the courts under the Indiana Constitution or any issues involving distribution of the public fund.

*Typicality.* Rule 23(a) also requires the representative parties' claims or defenses to be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality prerequisite is met if the named plaintiffs' claims "arise[] from the same . . . practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente*, 713 F.2d at 232). Although the named plaintiffs' claims need not be identical to all class members' claims, they must be "substantially similar" so that the interests of the class and its representatives may be aligned. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009).

Consistent with our assessment above of the named Plaintiffs' commonality, we hold that the named Plaintiffs' claims are not "substantially similar" for the bulk of this

lawsuit.  We believe Defendants summed up the situation best by their statement that "[t]he interveners want their money now, and delaying payment harms them."  Defs.' Resp. Br. at 5.  Indeed, as far as we can tell, only the six named Plaintiffs seek to enjoin the distribution of the public Stage Collapse fund.  We are aware of no other claimants, save these six named individuals, who prefer to litigate rather than negotiate with the Attorney General.  We are thus persuaded that typicality is satisfied only for the limited purpose of determining the constitutionality of Indiana's damages cap for tort claims.

*Adequacy of Representation.*  Rule 23(a)'s fourth prerequisite requires a showing that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  When assessing the adequacy of the named plaintiffs to represent the class as a whole, the court asks whether there is conflict between the interests of the class representative and those of the class.  Additionally, the court assesses whether class counsel is qualified, experienced, and able to conduct litigation in the interests of the entire class.  *In re Ready-Mixed Concrete*, 261 F.R.D. at 168-69 (citing *Sussman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977)).  Factors to consider include the relationship between the named plaintiffs and counsel, counsel's experience handling class action litigation, counsel's motivation, counsel's support staff, and counsel's other professional commitments.  *Gomez v. Ill State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (citing 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1762 (1986)).

The adequacy inquiries of Rule 23(a)(4) overlap to some degree with a court's

analysis of the typicality requirement. *Centurions v. Ferruzzi Trading Int'l, S.A.*, No. 89-c-7009, 1994 WL 114860, at *6 n.9 (N.D. Ill. Jan. 7, 1993). In fact, the Supreme Court has noted that these requirements "tend to merge," except as to considerations of counsel competency. *Falcon*, 457 U.S. at 157 n.13. We need not delve deeply into the above-mentioned factors; it seems fairly obvious that any adequacy issues do not stem from lack of competency on the part of Plaintiffs' counsel. However, because we have concerns about the inherent intra-class conflicts regarding fund distribution, we reach the same conclusion about adequacy of representation as we did about typicality. Namely, we find that this prerequisite has been satisfied only in terms of resolving the issue of whether Indiana Code § 34-13-3-4 passes constitutional muster.

Moving beyond these threshold requirements of Rule 23(a), we now address whether this action is maintainable under one of the subsections of Rule 23(b). *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000). Here, Plaintiffs expressly seek certification under Rule 23(b)(1)(B) and 23(b)(2).

***Rule 23(b)(1)(B).*** Class certification under Rule 23(b)(1)(B) is warranted if "prosecuting separate actions . . . would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties . . . or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). This situation tends to arise in cases where, as here, there is a common fund that may limit recovery to individual plaintiffs. *See Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 897 (7th Cir. 1999) (noting

that "a limited fund that must be distributed ratably [is] the domain of Rule 23(b)(1)" and citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)). Rule 23(b)(1)(B) classes must generally meet a high threshold, and the Supreme Court has questioned whether a mass tort action can ever be certified as a limited fund class action. In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 843 (1999), the Court opined that "[n]o draftsmen contemplated that, in mass torts, (b)(1)(B) 'limited fund' classes would emerge as the functional equivalent to bankruptcy by embracing 'funds' created by the litigation itself." The Court also set out the following requirements for certifying limited fund class actions under Rule 23(b)(1)(B):

1. the totals of all liquidated claims and the fund available to pay them, set definitely at their maximums, demonstrate that the fund cannot pay all the claims, resulting in "a scramble for precedence in payment" and amounts being paid to favored parties;

2. the entire inadequate fund is to be devoted to the claims such that the defendant does not receive "a better deal than *seriatim* litigation would have produced;" and

3. the claimants identified by a common theory of recovery are treated equitably among themselves.

*Ortiz*, 527 U.S. at 838-39.

It is unclear to us at this time whether all three of these factors can be established. Without having a firm grasp on the costs involved in the individual claimants' injuries, we can only speculate as to whether the $5,000,000 capped fund will be adequate.

Defendants have indicated that whatever funds exist will be devoted to claims such that the State would not somehow get a "better deal" via individual lawsuits, but we know too little about the distribution protocol to make any reasoned analysis regarding limited funds. By the same token, more information about the State's distribution process is necessary for a determination of whether claimants are or will be treated equitably. We do not conclude, as Defendants do, that the concept of a limited fund has *no* bearing on this litigation. However, we are not persuaded to invoke Rule 23(b) based on the obvious possibility that some claimants may ultimately be more successful in pursuing claims against Defendants than others. *See Hubler Chevrolet, Inc. v. Gen. Motors Corp.*, 193 F.R.D. 574, 579 (S.D. Ind. 2000).

*Rule 23(b)(2).* A class may be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class" and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2); *Ind. Prot. & Advocacy Servs. Comm'n v. Ind. Dep't of Corr.*, No. 1:08-cv-01317-RLY-JMS, 2010 WL 1737821, at *2 (S.D. Ind. Apr. 27, 2010). The primary limitation imposed by this subsection is that injunctive or declaratory relief must predominate as the class's desired remedy. *See Ind. Prot. & Advocacy Servs. Comm'n*, 2010 WL 1737821, at *2; *Hubler Chevrolet*, 193 F.R.D. at 579. Subsection (b)(2) is not fulfilled where the plaintiffs are seeking predominantly money damages. *Hubler Chevrolet*, 193 F.R.D. at 579 (citing *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992)).

Deciding whether Plaintiffs' case fits the Rule 23(b)(2) paradigm presents a close issue because Plaintiffs have multiple purposes in bringing their suit.  In seeking a ruling on the constitutionality of the Indiana Tort Claims Act's damages cap, they hope to prevent perceived future economic harm.  However, in asking the Court to enjoin money disbursement, they are presumably furthering their individual goals of obtaining as much of the fund as they feel they deserve.  "Declaratory relief is not to be used simply to 'lay the basis for a later damage award.'" *Hubler Chevrolet*, 193 F.R.D. at 579-80 (quoting *Sarafin v. Sears Roebuck & Co.*, 446 F. Supp. 611, 615 (N.D. Ill. 1978)).  Although we do not think Plaintiffs present their prayer for declaratory relief only to lay the basis for a monetary award, we cannot ignore the large amount of money involved in the State's public fund or their uncontroverted interest in securing a fair share of it.

In *Jefferson v. Ingersoll International, Inc.*, 195 F.3d 894 (7th Cir. 1999), the Seventh Circuit provided assistance on Rule 23(b)(2) class certification.  *Id.* at 898.  Specifically, Chief Judge Easterbrook suggested that a court need not certify the class under the "first matching subsection" of Rule 23; it should instead "endeavor to select the most appropriate subsection."  *Id.*  The import of *Jefferson* to this case is that when substantial money damages are at stake, the most appropriate subsection is Rule 23(b)(3) because this subsection provides for notice and an opportunity to opt out.  Were we to certify this class for any issue involving money damages, we would have to certify it under Rule 23(b)(3) for this reason—namely, to protect the interests of the Intervenors.  Thus, because it is preferable in our view to certify only the above-described

constitutional question, we believe Rule 23(b)(2) is the most appropriate subsection for the instant suit. This subsection "is designed for all-or-none cases in which 'final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.'" *Jefferson*, 195 F.3d at 897-98 (quoting Adv. Comm. Note to Fed. R. Civ. P. 23(b)(2)). This action is also maintainable under Rule 23(b)(2) because, to the extent that claimants would be bound to a judgment without notice or opportunity to opt out, it would only pertain to the issue of whether the State can limit its aggregate liability for the Stage Collapse to $5,000,000.

In conclusion, we hold that Plaintiffs' proposed class satisfies the demands of Rule 23(a) and is maintainable under Rule 23(b)(2) for the limited purpose of determining whether Indiana Code § 34-13-3-4 comports with the U.S. Constitution. In making this determination, we are guided by Rule 23(c)(4), which instructs that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). We follow the Seventh Circuit's guidance that if a case presents "hot-button" issues such as constitutional inquiries, "it makes good sense, especially when the class is large, to resolve . . . [such] issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Lastly, although we acknowledge the real merits of Defendants' Eleventh Amendment and abstention arguments against class certification, our limited certification does not run afoul of these doctrines.

## II.  Motion for Preliminary Injunction

## A.  Standard of Review

The grant of preliminary injunctive relief is appropriate where the moving party can demonstrate the following: (1) a reasonable likelihood of succeeding on the merits; (2) irreparable harm if such relief is denied; and (3) an inadequate remedy at law.  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am.*, 549 F.3d 1079, 1086 (7th Cir. 2008).  Emergency relief must be denied if the moving party fails to establish any one of these threshold requirements.  *Id.*  However, if the moving party succeeds in this demonstration, the court must then assess the balance of harm.  "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief."  *Id*

After balancing the harm to the movant and the public interest, the district court must, in its discretion, "arrive at a decision based on the subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case."  *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436 (7th Cir. 1986).  This exercise requires the court to employ a "sliding scale" approach; that is, the greater the likelihood of a plaintiff's success on the merits, the less the balance of harm need support his position.  *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).  Such an approach, although "not mathematical in nature," permits the court to weigh competing considerations and craft

proper relief.  *Buquer v. City of Indianapolis*, – F. Supp. 2d –, 2011 WL 2532935, at *6

(S.D. Ind. June 24, 2011) (citing *Ty, Inc.*, 237 F.3d at 895-96).

**B.  Discussion**

Plaintiffs have asked this court to enjoin Defendants from pursuing two courses of

action.  First, they seek to prevent Defendants from settling any tort claims related to the

Stage Collapse and, accordingly, from allowing any claimants to release Defendants from

liability as to their claims.  Further, they ask us to prevent Defendants from making any

disbursements to claimants from the $5,000,000 public fund designated for Stage

Collapse victims.  Pls.' Mot. for Prelim. Inj. at 4-5.  Defendants rejoin that the record is

too bare to support a finding that any emergency existed either at the time of the filing of

the Motion or presently to warrant injunctive relief.  In fact, they argue, "there [is not]

even evidence that these plaintiffs were injured."  Defs.' Resp. Br. at 2.  Because other

claimants have chosen to negotiate with the Attorney General to meet their needs,

Defendants allege that Plaintiffs have voluntarily foreclosed any entitlement they might

otherwise have had to emergency relief.  *See id.*

*Likelihood of success on the merits.*  To show a likelihood of prevailing on the

merits under 42 U.S.C. § 1983, Plaintiffs must demonstrate that:  (1) they held a

constitutionally protected right; (2) they were deprived of this right in violation of the

Constitution; (3) Defendants intentionally caused this deprivation; and (4) Defendants

acted under color of state law.  *Patrick v. Jasper Cnty.*, 901 F.2d 561, 565 (7th Cir. 1990).

Plaintiffs allege that the only factor at issue is the second factor and that "an affirmative

answer is manifest."  Pls.' Mot. for Prelim. Inj. at 11.  They cite *Christopher v. Harbury*, 536 U.S. 403, 413 (2002), to explain that the instant litigation is a "forward-looking" situation where state action frustrates a plaintiff's ability to prepare for and file a lawsuit. *Id.* at 11.  As previously discussed, Defendants assert that Plaintiffs' significant obstacle in dealing with this prong of the analysis is "that there are *no* facts in this record."  Defs.' Resp. Br. at 1.  We are unwilling to fault Plaintiffs too severely for the lack of evidentiary support for their requested relief at this stage of the litigation.  Still, the present state of facts underlying this litigation does not suggest that the named Plaintiffs and any other claimants are unable to negotiate with the Attorney General.

Perhaps more importantly, we do not believe Plaintiffs have demonstrated a likelihood of success on the merits given well-established case law on damages caps for tort claims against governmental entities.  Straightforward statutory research provides support for the proposition that states *can* and *do* justifiably limit their liability when sued in tort by private individuals.  *See, e.g.*,  Ala. Code § 11-93-2; Alaska Stat. § 09.17.010; Colo. Rev. Stat. Ann. § 24-10-114; Del. Code Ann. § 4013; Fla. Stat. Ann. § 768.28; Ga. Code Ann. § 50-21-29; Idaho Code Ann. § 6-926; Me. Rev. Stat. Ann. § 8105; Md. Code Ann. § 12-104; Mass. Gen. Laws Ann. ch. 258, § 2; Minn. Stat. Ann. § 466.04; Neb. Rev. Stat. § 13-922; N.H. Rev. Stat. Ann. § 507-B:4; N.M. Stat. Ann. § 41-4-19; Okla. Stat. Ann. tit. 51, § 154; Pa. Cons. Stat. Ann. § 8553; S.C. Code Ann. §15-78-120; Vt. Stat. Ann. tit. 5, § 101.023; W. Va. Code § 29-12A-7.  In light of the growing body of statutory law supporting damage caps, we cannot conclude that, on the face of the lawsuit,

Plaintiffs are clearly "likely" to succeed on their assertion that Indiana's tort claims damages caps violate the federal Constitution.[5]

*Irreparable harm/inadequate remedy at law.* Plaintiffs have not presented sufficient evidence to establish that they will suffer significant harm stemming from Defendants' conduct if a preliminary injunction does not issue. As described in the briefing, some one hundred claimants have recently made known to Defendants their intent to seek a portion of the public fund for Stage Collapse victims. With the obvious variant of injury details, the named Plaintiffs in this action appear to be in precisely the same situation as all other claimants. Each claimant, in our view, has the following options: (1) to abstain from negotiations and file a state tort claim action preparatory to proceeding with a lawsuit, or (2) to actively pursue negotiations with the Attorney General resulting in a settlement of their claims. That Defendants have not gone out of their way to pursue settlement with these claimants, as Plaintiffs allege, is unpersuasive. Pls.' Reply Br. at 4-5.

Moreover, even if Defendants' creation of an early deadline for filing the Claim Form can be deemed prejudicial, and thus harmful, it does not rise to the level of irreparable harm for which no adequate remedy at law exists. Again, if the change in deadline is Plaintiffs' main concern, they have still not lost their ability to file a lawsuit in state court to vindicate this grievance. And in the event that their litigation is

---

[5]We also note that if Plaintiffs' intended position is that they will not receive enough money from the public fund, such a claim would be unripe until the record contains evidence of a settlement protocol and actual money distribution to other similarly situated claimants.

unsuccessful, we cannot ignore the fact that Plaintiffs *have* met the filing deadline that they allege is harmful.  They remain entitled to share in the $5,000,000 fund distribution process in the same way and extent as the claimants who have pursued a different course of action.  In light of all claimants' basic desire to be made whole from the public fund, we are not persuaded that legal remedies are inadequate in this situation.  *See Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 949 (S.D. Ind. 2008). In addition, any potential injuries appear readily quantifiable in an action at law, and therefore, Plaintiffs have not satisfied the second element of the injunction standard.

  ***Balance of harms and public interest.***  Because Defendants have already committed to distributing the full extent of the $5,000,000 public fund, Plaintiffs contend that there is no harm to Defendants other than that which would inure to them from having to litigate amounts to pay individual claimants.  By contrast, Plaintiffs allege that they will experience far greater—and, indeed, irreparable—harm if no injunction is granted.  Specifically, they will be unable to have their damage claims determined by a judge and jury, and they will lose the opportunity to challenge the validity of Indiana Code § 34-13-3-4.  Plaintiffs cite the public's strong interest in seeing the vindication of an individual's constitutional rights, which certainly has merit.  Pls.' Reply Br. at 10. Nevertheless, we do not believe the balance of the harms weighs in favor of granting a preliminary injunction.

  As public officials, Defendants face a daunting set of responsibilities when allocating State funds.  They must remain ever mindful of their obligation to budget

prudently and safeguard the overall financial health of the State. At the same time, they are tasked with making a fair and equitable distribution of these funds. They also know that a fair distribution, in situations as tragic and emotionally charged as the Stage Collapse, necessarily means that a distribution should not be unfairly delayed. We are acutely aware that "the current economic climate imposes enormous challenges on the State's ability to deliver on . . . governmental services." *C.H. v. Payne*, 683 F. Supp. 2d 865, 884 (S.D. Ind. 2010). Given the severity of Plaintiffs' and other similarly situated claimants' reported injuries, we believe the public interest would not be served by restricting Defendants' scope of action as Plaintiffs have requested. When compared with the potential deprivation of much-needed money that the claimants are likely to suffer if a preliminary injunction is granted, the balance of hardships tips in Defendants' favor.

### III. Motion for Emergency Discovery

Having determined that this action will proceed as a limited class action under Rule 23(b)(2), we believe that the involved issues will now center more around matters of law than issues of fact. We doubt that emergency discovery would provide much in the way of fairness or efficiency, and we therefore decline to grant Plaintiffs' Motion for Emergency Discovery. Along these lines, we also fail to see what additional utility an evidentiary hearing might provide for either the parties or the Court, and we conclude that no such hearing is necessary at this juncture.

### <u>Conclusion</u>

For the foregoing reasons, the Court now GRANTS Plaintiffs' Emergency Motion

to Certify Class under Rule 23(b)(2), but only for the issue of whether Indiana Code § 34-13-3-4 violates the U.S. Constitution.  The Court also DENIES Plaintiffs' Motions for Preliminary Injunction and for Emergency Discovery.

     IT IS SO ORDERED.

Date: _____11/23/2011    _____

                                         SARAH EVANS BARKER, JUDGE
                                         United States District Court
                                         Southern District of Indiana

Copies to:

Kenneth J. Allen
KENNETH J. ALLEN & ASSOCIATES, P.C.
kja@kenallenlaw.com

Matthew James Anderson
KENNETH J. ALLEN & ASSOCIATES, P.C.
manderson@kenallenlaw.com

David A. Arthur
OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Bryan L. Bradley
KENNETH J. ALLEN & ASSOCIATES, P.C.
blb@kenallenlaw.com

Robert D. Brown
KENNETH J. ALLEN & ASSOCIATES, P.C.
rdb@kenallenlaw.com

Paul Sherman Kruse
PARR RICHEY OBREMSKEY FRANDSEN & PATTERSON LLP-Lebanon
pkruse@parrlaw.com

Peter L. Obremskey
PARR RICHEY OBREMSKEY FRANDSEN & PATTERSON LLP
jdouglas@parrlaw.com

Anthony W. Patterson
PARR RICHEY OBREMSKEY FRANDSEN & PATTERSON LLP-Lebanon

tpatterson@parrlaw.com